IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GENEE L. HALTON-HURT, BURNICE WRIGHT, MARCUS WATKINS and SHASITY DAVIDSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff<br><br>vs.<br><br>THE TJX COMPANIES, INC. d/b/a T.J. MAXX,<br><br>Defendant. | § § § § § § § § § § § § § § § § | NO. 3:09-CV-02171-N |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' INCOMPLETE DISCOVERY RESPONSES AND TO COMPEL SUFFICIENT DISCOVERY RESPONSES AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PROTECTIVE ORDER**

Defendant, The TJX Companies, Inc., files this Reply in Support of Its Motion to Strike Plaintiffs' Incomplete Discovery Responses and to Compel Sufficient Discovery Responses and Response to Plaintiff's Cross-Motion for Protective Order.

**I.   SUMMARY**

Plaintiffs' Response to Defendant's Motion provides no compelling reasons to deny individualized discovery regarding the 93 Opt-Ins' off-the-clock FLSA claims. Plaintiffs provide no explanation whatsoever for their failure to take appropriate action to attempt to limit the scope of discovery in this matter to "representative discovery" until *after* the discovery responses at issue were due and *after* TJX filed its Motion to Strike and to Compel. At this late stage, with the deadline for Defendant to file its Motion for Decertification looming, Plaintiffs should not be permitted to now attempt to so severely restrict the scope of discovery.

While case law exists which provides that representative discovery can be used in FLSA cases, there is no strict rule requiring it or prohibiting individualized discovery. Contrary to Plaintiffs' Response, individualized discovery in FLSA collective actions is not improper. Indeed, as cited in Defendant's Motion, a number of courts have approved and allowed it. Especially in cases like the one presented here, where only a limited number of individuals opted-in, with a number of significant differences between them (stores, managers, positions, part-time versus full-time, etc.), it is appropriate and sensible to allow full discovery of the information, documents and evidence relevant to the inquiry regarding whether the Plaintiffs and Opt-Ins are "similarly situated" to each other so as to survive a Motion for Decertification.

Plaintiffs bear the burden of showing that Defendant's discovery requests were improper or unreasonable, but Plaintiffs have failed to do so (and certainly failed to do so in a timely manner). Accordingly, the Court should grant Defendant's Motion, strike Plaintiff's boilerplate and invalid objections to the interrogatories and requests for production, and require Plaintiffs to provide complete responses to the discovery requests.

## II.   ARGUMENTS

**A.   IT IS "TOO LITTLE, TOO LATE" FOR PLAINTIFFS TO ATTEMPT TO LIMIT THE SCOPE OF DISCOVERY IN THIS CASE**

As explained in Defendant's Motion, if Plaintiffs wanted to restrict the scope of discovery to "representative discovery," the **only** proper course of action would have been for Plaintiffs to have moved the Court for a protective order *before* Plaintiffs' discovery responses were due and Defendant filed its Motion to Compel. O'CONNOR'S FEDERAL RULES 412 (Chapter 6.A § 12) (Michael C. Smith, ed. 2011) ("A motion for protective order should be filed before the time to respond to the discovery request."). Moore's Federal Practice provides:

> Although Rule 26(c) is silent as to the time within which a protective order must be made, the courts have imposed the requirement that the motion be timely or 'seasonable.' A motion for a protective order is timely if made prior to the date set for producing the discovery . . .
>
> The obligation to timely move for a protective order applies to written discovery as well as oral depositions. A party may not simply note its objection to a request for written discovery and wait for the requesting party to move to compel discovery. The party seeking protection is responsible for initiating the process in a timely manner.

6-26 Moore's Federal Practice - Civil § 26.102[2].

Notably, in the vast majority of the cases cited in Plaintiffs' Response, the responding party took action to address the discovery limitation at an earlier stage in the discovery process (when preparing joint reports; immediately after notice was approved; working on proposed discovery orders; prior to depositions or discovery due dates; etc.). As is evident from the bulk of the cases cited by Plaintiff, the appropriate practice is to address such discovery with the Court before discovery is due. Failing to take such action and waiting until after discovery is overdue and a motion to compel has been filed is unwarranted and improper.

No order or agreement limiting discovery in this matter to "representative discovery" existed at the time Defendant served its discovery requests to the additional Opt-Ins. Plaintiffs received the discovery requests in early August 2011 and had almost two months to seek a protective order regarding Defendant's discovery requests, but Plaintiffs took no action whatsoever until they filed their Response to Defendant's Motion on October 31, 2011. Plaintiffs have no good cause for this improper delay. Plaintiffs should not be rewarded for attempting to rely on their bare objections without filing a motion for protective order in a timely

fashion.[1]  For this failure to follow procedure alone, the Opt-In Plaintiffs should be compelled to fully respond to Defendant's interrogatories and requests for production.

B.  **FULL DISCOVERY RELATING TO ALL THE OPT-INS IS ENTIRELY APPROPRIATE IN THIS MATTER AT THIS STAGE OF THE PROCEEDINGS**

   1.  **Plaintiffs Bear The Burden Of Showing Good Cause For Not Providing The Requested Discovery**

It is important to note that ***Plaintiffs*** have the burden of establishing that the discovery sought is somehow inappropriate and that "good cause" exists for a protective order.  *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998); *United States v. Garnett*, 571 F.2d 1323, 1326 & n.3 (5th Cir. 1978); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, 2010 U.S. Dist. LEXIS 127454, at *17 (E.D. Tex. Dec. 2, 2010); *Shingara v. Skiles*, 420 F.3d 301, 305-06 (3rd Cir. 2005).  It is not Defendant's burden to show some compelling reason for the discovery sought.  Instead, it is Plaintiffs who must establish that, despite their inaction prior to the discovery being due and the reasonableness and relevance of the information and documents requested, Defendant's interrogatories and requests for production must be restricted to a small percentage of the Opt-Ins.

---

[1] Indeed, Plaintiffs should have made efforts to get a protective order limiting discovery in place prior to the date the discovery at issue was due.  "While it is obvious that moving for a protective order is an option in response to a request for document production, it is not as certain that mere pendency of such a motion constitutes good cause to avoid an obligation to respond timely in writing to the discovery request."  *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 157-58 (S.D. Tex. 2009).  "The Advisory Committee Notes to the 1993 Amendments to Rule 37(d) appear to require that the movant obtain an actual protective order from the court before it is relieved of its obligation to respond and object timely . . . ."  *Id.* at 158.

### 2. Defendant Has Reasonable, Compelling Reasons For Seeking The Discovery At Issue

On page 2 of Plaintiff's Response, Plaintiffs accuse Defendant of having an illicit motive in attempting to secure the discovery at issue. Plaintiffs indicate that Defendant is trying to: (1) use the discovery to "coerce" as many class members as possible to withdraw because the burden of responding to the discovery requests outweighs their potential damages; and (2) "run up the costs" of the litigation by requiring "hundreds of hours of additional work assisting class members in understanding, interpreting, and responding to TJX's discovery." *See* Plaintiffs' Response, page 2. Plaintiffs' biased and self-serving accusations are presented without evidence or foundation and can just as easily be turned around on Plaintiffs: Plaintiffs are seeking to avoid the discovery so that they can keep in as many Opt-Ins as possible, without regard to the legitimacy of their claims,[2] without having to participate in discovery,[3] while doing as little work as possible to move this case forward past the Decertification stage or to force TJX to settle. While Plaintiffs may be willing to allow bogus or unsubstantiated claims to remain in this lawsuit and to result in settlement payments, the Court should not be willing to permit such impropriety and violation of TJX's due process rights.

As discussed to some extent in Defendant's Motion, full discovery relating to all of the Opt-Ins is reasonable and warranted in this matter for a number of reasons that relate directly to the upcoming decertification filings and the similarly situated analysis:

- It would be unfair and prejudicial to TJX to limit the Opt-Ins from whom it may obtain discovery, while leaving the door open for Plaintiffs to present evidence (declarations,

---

[2] For example, three of the Opt-Ins provided declarations stating they ***never*** worked off-the-clock and a great number of them were part-time employees who would have incredulously have to have worked more than 10-15 hours off-the-clock before ever being entitled to any overtime compensation under the FLSA.

[3] Refusing to provide even basic, crucial information such as how many hours each Opt-In allegedly worked "off-the-clock."

- documents, etc.) from any or all of the Opt-Ins (or, more likely, to cherry pick those that help their arguments, while ignoring those that damage them) in order to combat TJX's Motion for Decertification.  This would put TJX at a tremendous disadvantage on the decertification issue.

- There has been no determination by the Court that the Plaintiffs and/or Opt-Ins are "similarly situated" to each other (*see* Order dated March 15, 2011, Docket Entry 32).  Thus, there is no reason to believe that limited discovery of a small percentage of the Opt-Ins will be sufficient to discover all key facts relating to the "similarly situated analysis."  Looking at only 20% of the Opt-Ins could lead to key facts relevant to the similarly situated analysis not being discovered or fully analyzed.

- The Plaintiffs and Opt-Ins in this lawsuit different in a variety of important ways, thus making the viability of their representation of each other questionable.  Among the ways the differ from each other are:
    - Part-time versus full-time positions
    - Various positions throughout the stores (Cashier, Stocker, Coordinator, etc.)
    - Hours scheduled (from consistently less than 20 to more than 35 or even 40)
    - Hours worked
    - Different stores (12 stores total)
    - The sizes and staffing levels at each store
    - Different managers (store managers, assistant managers, etc.)

- Given the number of part-time employees amongst the Opt-Ins, it makes sense to fully inquire into how all of these employees who were never scheduled or "clocked in" anywhere close to 40 hours in a workweek somehow worked a significant number of hours off-the-clock, both to get to and exceed 40 hours.  Failing to allow full discovery on this issue presents great potential for bogus claims to survive and for improper "representation" by other class members;

- The amount of time each Opt-In claims to have worked off-the-clock could vary substantially based on a variety of factors: store, the Store Manager, the assistant managers, the Opt-Ins positions, whether Opt-Ins are part-time or full-time, time period employed, etc.;

- Some of the employees were employed before the applicable statutes of limitations periods, so the dates they worked off-the-clock are important for assessing limitations issues (both under the 2-year or 3-year limitations period);

- There is no evidence on record that *any* of the Opt-Ins have sufficient personal knowledge to enable them to testify about the circumstances or details regarding the time allegedly worked off-the-clock by other Opt-Ins.[4]

- The suggested 20% of Opt-Ins would not amount to even 2 Opt-Ins per store. Given the number of different positions and circumstances at each store, valuable information and difference could be missed in representative discovery;

Plaintiffs' contention that requiring all of the Opt-Ins to respond to interrogatories and requests for production would "run up the costs of litigation by requiring hundreds of hours of additional work assisting class members in understanding, interpreting, and responding to TJX's discovery," is a ridiculous overstatement with no basis in reality. Obtaining the factual information and limited documents in the Opt-Ins' possession to respond to Defendant's discovery requests would require a reasonable amount of time and effort from the Opt-Ins and their counsel. Again, while Plaintiffs, Opt-Ins and their counsel hope to do as little as possible to reach some kind of payday, it is unfair to TJX to require it to guess about the facts, documents and alleged damages that relate to each Opt-Ins' claims that he/she was denied overtime compensation for off-the-clock work – especially in light of the fact that TJX has already put forth evidence that a significant number of Opt-In Plaintiffs do not have viable claims for unpaid overtime.

Plaintiffs' contention that TJX should have much of the information and documents sought from the Opt-Ins is meaningless. Defendant is primarily focused on the facts and

---

[4] This was a key factor in proceeding with representative-type discovery in *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985), which was cited in Plaintiffs' Response.

evidence supporting the Opt-Ins' off-the-clock overtime claims, and the Opt-Ins should be able to identify such basic facts as when, why and how they worked off-the-clock and who required or knew about it, as well as to produce any documents in their possession (if any) that support their claims. Indeed, the documentation in TJX's possession shows that all of the Plaintiffs and Opt-Ins were paid for all hours worked, and that all of the Plaintiffs and Opt-Ins specifically *verified* the accuracy of the hours on their timesheets and the pay they received for each and every timesheet submitted and paycheck accepted.[5]

### 3. The Discovery Sought By Defendant Is Reasonable And Necessary

The focus of Defendant's interrogatories and requests for production are the key facts and evidence supporting Plaintiffs' and Opt-In Plaintiffs' off-the-clock claims, such as:

- The details of alleged off-the-clock work (dates, times, amount of time worked off-the-clock, reason for working off-the-clock, etc.)

- The identities of managers responsible for them allegedly working off-the-clock;

- Witnesses to them allegedly working off-the-clock; and

- Communications with other TJX employees regarding off-the-clock allegations and/or issues.

Other categories of information and documents should not be difficult or time-consuming to obtain, such as the Opt-Ins' prior lawsuits or testimony, tax returns (or authorization forms for TJX to use to obtain them from the IRS), etc. Several of the interrogatories and requests for production can be answered the same or similarly for all of the Opt-Ins (i.e., those relating to experts, common issues of law and fact, how the Plaintiffs and Opt-Ins are similarly situated, the facts and documents supporting the specific allegations in Plaintiff's pleadings). It is absurd for

---

[5] It is worth noting that even the named Plaintiffs in this action have refused to provide detailed information regarding the time they allegedly worked off-the-clock.

Plaintiffs to contend that these basic factual and legal inquiries are overly burdensome, unreasonable or unnecessary. Full discovery on these key issues will allow for a thorough analysis of the facts and evidence relevant to the similarly situated analysis and decertification, as opposed to the insignificant, insufficient approach Plaintiffs encourage in their Response.

### III.   CONCLUSION

Plaintiffs have not presented clear and compelling reasons to disallow the discovery served on the Opt-Ins in August 2011. Representative discovery would significantly hinder Defendant's ability to fully investigate and analyze the Opt-Ins claims and possible defenses, including issues directly relating to decertification. In this relatively small collective action, where numerous differences exist among the Plaintiffs and Opt-Ins, it is reasonable and appropriate to allow full discovery regarding the factual bases and evidence for the Opt-Ins' claims and allegations.

For the reasons outlined above and in Defendant's Motion to Strike Plaintiffs' Incomplete Discovery Responses and to Compel Sufficient Discovery Responses, Defendant requests that the Court address Plaintiffs' clear violation of the Federal Rules of Civil Procedure by issuing an order: (1) striking Plaintiffs' objections to Defendant's interrogatories and requests for production, and (2) compelling Plaintiffs to provide complete discovery and to produce all responsive documents.

DATED: November 14, 2011

Respectfully submitted,

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas  75201
Telephone:  (214) 880-8100
Facsimile:   (214) 880-0181

/s/ *Scott C. Sherman*
Steven R. McCown
TX Bar Number 13466500
smccown@littler.com
Allan G. King
TX Bar Number 11433200
aking@littler.com
Scott C. Sherman
TX Bar Number 24041906
ssherman@littler.com
Kim Rives Miers
TX Bar Number 24041482
kmiers@littler.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

On November 14, 2011. I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(5):

/s/ *Scott C. Sherman*
Counsel for Defendant